SEALED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

JUL 15 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| | ) | 2:15 - MJ - 0148 - - - EFB |
| ANDREW KIMURA & PAVITAR DOSANGH | ) | |
| SINGH aka "Peter" | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 2013 through July 2015___ in the county of ___Sacramento___ in the ___Eastern___ District of ___California___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy |
| 18 U.S.C. Section 666(a)(1)(B) | Bribery Concerning Programs Receiving Federal Funds (KIMURA) |
| 18 U.S.C. Section 666(a)(2) | Bribery Concerning Programs Receiving Federal Funds (SINGH) |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew Young
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-15-2015

_____
*Judge's signature*

City and state:   Sacramento, CA

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND SEARCH WARRANTS

### Introduction

1.      This affidavit is submitted in support of a criminal complaint, arrest warrants, and search warrants against **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** aka "Peter."

2.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents, witnesses, and organizations.

3.      This affidavit is intended to show that there is sufficient probable cause for the arrest of **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH**.  This affidavit is also being submitted in support of an application for a warrant to search person **PAVITAR DOSANGH SINGH**, as further described in Attachment A-1, including the cellular telephone under the possession, custody, and control of **PAVITAR DOSANGH SINGH** with are also set forth with the number 707-590-5118 ("**TARGET PHONE 1**"), and 916-533-4208 ("**TARGET PHONE 2**"), and the person of **ANDREW KIMURA** as further described in Attachment A-2, including the cellular telephone under the possession, custody, and control of **ANDREW KIMURA** with the number 916-501-8702 ("**TARGET PHONE 3**"), and 916-604-2339 ("**TARGET PHONE 4**"), and to search and seize the information more fully described in Attachments B-1 through B-2, respectively.

4.      For the reasons set forth below, I respectfully submit that there is probable cause for the arrest of **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** for criminal violations of 18 U.S.C. Section 666 (Bribery), 18 U.S.C. § 1028(a)-(c) (fraud and related activity in connection with identification documents); and Title 18, United States Code, Section 371 (Conspiracy) and to search the persons of **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH**, including for **TARGET PHONE 1,  TARGET PHONE 2, TARGET PHONE 3,** and **TARGET PHONE 4** (collectively **TARGET PHONES**).

5.      Section I of the affidavit details the affiant's background.  Section II of the affidavit identifies the applicable statutes.  Section III describes case background and provides an

investigative summary. Section IV provides evidence supporting probable cause. Section V describes analysis of the **TARGET PHONES** to be searched.

## I.   AFFIANT'S BACKGROUND

6.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for over 16 years. I received over four months of investigative training at the FBI Academy in Quantico Virginia and attended several training courses during the past 16 years that directly relate to corruption investigations. During my time as a Special Agent with the FBI, I have conducted and /or participated in hundreds of criminal investigations involving, but not limited to: Corruption of Public Officials, Money Laundering, Criminal Enterprises, Terrorism, National Security Matters, Bank Fraud, Mail Fraud, Drugs, Wire Fraud, Computer Fraud, Financial Institution Fraud, Mortgage Fraud, and other white collar crimes. Many of these investigations have involved the use of cooperating witnesses and informants. I have conducted and/or participated in numerous search warrants and have written affidavits in support of search warrants. I have conducted physical surveillance and have monitored electronic surveillance. I am currently assigned to the Sacramento Division of the FBI on an investigative squad that handles investigations of corruption.

7.      Based on my training and experience and discussion with other law enforcement personnel, it is known that persons, who engage in corruption and bribery, frequently use cell phones to maintain contact with their associates in order to plan meetings, provide updates and directions to them, and to transmit information. This frequently occurs due to the convenience of communications via telephone versus travelling to meet in person.

## II.   APPLICABLE STATUTES
### 18 U.S.C. § 371

8.      Title 18, United States Code § 371 provides, in relevant part, that it is a felony for "two or more [to] conspire . . . to commit any offense against the United States . . . and for one or more of such persons [to] do any act to effect the object of the conspiracy . . . ." 18 U.S.C. § 371.

### 18 U.S.C. § 666

9.      Title 18, United States Code § 666 provides, in relevant part, that, it is a felony for a person, who is "an agent . . . of a State . . . or agency thereof" that "receives, in any one year, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan,

guarantee, insurance, or other form of Federal assistance," and "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government or agency involving anything of value of $5000 or more . . . ."  18 U.S.C. § 666(a)(1)(B), (b).

10.     Subsection (a)(2) of Section 666 provides, in relevant part, that it is also a crime for whoever "corruptly gives, offers, or agrees to give anything of value to any person, with the intent to influence or reward an agent of . . . a State . . . in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . ."  18 U.S.C. § 666(a)(2).

### 18 U.S.C. § 1028

11.     Title 18, United States Code § 1028 provides, in relevant part, that it is felony to: "knowingly and without lawful authority [produce] an identification document, authentication feature, or false identification documents" or to "knowingly [transfer] an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority."  18 U.S.C. §§ 1028(a)(1)-(2).

### III.     CASE BACKGROUND AND INVESTIGATIVE SUMMARY

12.     This case is an investigation into the alleged fraudulent procurement of identification documents by brokers and bribery of California Department of Motor Vehicle (DMV) employees to illegally issue commercial California Driver Licenses (CDL).  The scheme consists of several middle men (brokers) who accept the money from an individual looking to get a CDL without having to take and pass any of the required CDL tests.  The brokers use the individual's money to bribe DMV employees to circumvent or falsely enter information into DMV computer systems in order to have a CDL issued to that individual.  The utilization of brokers to make the bribe payments to the DMV employees provides protection to the DMV employees and allows for the brokers to take a portion of the bribe money for themselves.  A FBI Confidential Human Source (CHS) was utilized to make, identify, and provide bribe money to two brokers in order for them to bribe their DMV contacts to obtain CDLs.  The FBI CHS was able to illegally obtain a CDL for himself and for another FBI CHS.  The broker identified in this investigation that relays bribes to a DMV employee identified as **ANDREW KIMURA** is **PAVITAR DOSANGH SINGH** aka "Peter."

13.     In 2011, FBI CHS, hereafter CHS3257, reported that owner/operator of a truck school located in Sacramento could get a commercial driver license for someone without that person having to pass the required tests.  CHS3257 reported that the individual doing this was called "Peter" and that he accepted money from individuals and used said money to bribe DMV employees so they would illegally issue CDLs to the paying individual.  Peter was later identified as **PAVITAR DOSANGH SINGH**.

14.     Beginning in June 2011 and continuing through January 2015, CHS3257 engaged in conversations, both in person, and via the telephone, with Peter and another broker named "Sandhu," aka "Sodhi," later identified as DOSANJH KULWINDER SINGH, who was introduced to CHS3257 by **PAVITAR DOSANGH SINGH**.  CHS3257 had recorded conversations with Sodhi concerning paying a bribe to get a CDL for CHS3257.  During those conversations and meetings CHS3257 was told that he would not have to take or pass any of the required DMV tests in order to receive a CDL.  Both **PAVITAR DOSANGH SINGH** and Sodhi told CHS3257 that they had contacts within DMV they used to get the CDLs issued.  During the course of the investigation, CHS3257 paid money to both **PAVITAR DOSANGH SINGH** and Sodhi to get the written tests and the driving tests for CDLs passed.  CHS3257 was able to get a CDL for himself and his brother by paying money to Peter and Sodhi.  CHS3257 was also able to get the written test passed for another CHS by paying money to Sodhi.

15.     CHS3257 is not being paid to cooperate with the FBI on this investigation.  CHS3257 has a criminal conviction for immigration fraud.  CHS3257 has been granted deferred actions on an immigration matter in return for the cooperation with the FBI.  The affiant is not aware of any instances where the CHS provided unreliable or inaccurate information.

16.     In April 2015, agents executed search warrants for **PAVITAR DOSANGH SINGH**'s phone revealed evidence of communications to a third broker.  Thereafter, agents approached the third broker, who admitted to being involved with **PAVITAR DOSANGH SINGH** in illegal activity related to obtaining drivers licenses, and that this broker acted, at times, as an intermediary between **PAVITAR DOSANGH SINGH** and **ANDREW KIMURA**, including with respect to the payment of money received from **PAVITAR DOSANGH SINGH** to be paid to **ANDREW KIMURA** in exchange for **ANDREW KIMURA** accessing the DMV's database to alter individuals' records to fraudulently indicate that individuals had passed various written or driving tests.

17.     The third broker agreed to cooperate in the FBI's investigation into the illegal activity as a CHS, referred to hereafter as CHS70479.  CHS70479 is not being paid to cooperate with the FBI on this investigation.  He is cooperating in hopes of obtaining favorable treatment with respect to his participation in the bribery and identity fraud scheme discussed herein.  To the affiant's knowledge, CHS70497 does not have a criminal history.

### DMV's Process For Issuance Of CDLs

18.     The California DMV is a political subdivision and agency of the State of California that registers vehicles in California and licenses California drivers.  The DMV also issues identification cards for individuals in California.  The DMV is funded by vehicle registration and licensing fees paid by residents and licensees of the State of California.  The DMV also received federal grants, including the following grant money for the following fiscal years (July 1 through June 30): $2,500,000 for fiscal year 2011-2012; $726,000 for 2012-2013; $4,000,000 for fiscal 2013-2014; and $800,000 for fiscal year 2014-2015.

19.     The California DMV issues different classes of CDLs, including Class A and Class B commercial licenses and Class C general licenses.  The issuance of a Class A, Class B, or Class C CDL affects interstate commerce in that, among other effects, the licenses enable recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

20.     At all relevant times between 2011 and 2015, in order to obtain a CDL, an applicant was required to pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant.  Thereafter, the applicant was required to pass one or more written examinations based on the type of license.  The DMV administered written examinations at most DMV locations.  After an individual passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results.  Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

21.     The behind-the-wheel driving test was administered by a Licensing-Registration Examiner ("LRE") for the DMV.  The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California, including Salinas, California.  In contrast, the DMV typically administered behind-the-wheel

driving examinations for a Class C general CDL available at most DMV locations.  After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results.  The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered.  Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

22.     According to the DMV, ANDREW KIMURA is an LRE who has been employed by the DMV since July 2010.  His job description, as provided by the DMV as an LRE is that he interprets, applies, and explains to the public the Vehicle Code, administrative regulations, policies, and procedures pertaining to the licensing of drivers and the registration and ownership of motor vehicles; gives written, oral, visual, and practical performance tests in the course of examining applicants for ability and fitness to operate various types or combinations of motor vehicles safely, including commercial vehicles in designated field offices, and for knowledge of Vehicle Code requirements; serves notices of and gives and receives information concerning suspensions, revocations, and cancellations of licenses; determines if vehicles are subject to registration and transfer of ownership; inspects vehicles for body type, usage, and verification of identification and license numbers; issues license plates, tabs, and operating permits; determines, collects, and accounts for fees and penalties; and makes reports concerning work performed.

## IV.     EVIDENCE SUPPORTING PROBABLE CAUSE
### CHS3257 obtains first commercial driver's license with bribe

23.     Beginning in June 2011, CHS3257 began recording conversations with **PAVITAR DOSANGH SINGH** concerning paying a bribe to get a CDL without having to take the tests.  During the initial conversations **PAVITAR DOSANGH SINGH** told CHS3257 that it would cost $700 for the DMV written test answers for each of the three different CDL written tests that are used by the DMV.  **PAVITAR DOSANGH SINGH** also informed CHS3257 that he charges $1200 for the written test answers along with the driving test.  **PAVITAR DOSANGH SINGH** further explained to CHS3257 that for $2000 **PAVITAR DOSANGH SINGH** could get the written test passed for CHS3257 without the CHS having to take the test through a contact at the DMV.  On June 23, 2011, CHS3257 paid **PAVITAR DOSANGH**

SINGH $2000 in order for **PAVITAR DOSANGH SINGH** to bribe his DMV contact to pass the written test for CHS3257 without CHS3257 having to take the test.

24.     In December 2012, after a lengthy delay that was explained by **PAVITAR DOSANGH SINGH** to CHS3257 as having to do with a variety of issues concerning his DMV contact, **PAVITAR DOSANGH SINGH** requested $5000 from CHS3257 in order to get the license completed. **PAVITAR DOSANGH SINGH** told CHS3257 that the money would include the passing of the written test and the passing of the behind-the-wheel test without CHS3257 having to take any of the tests. **PAVITAR DOSANGH SINGH** explained that an initial payment of $1200 would be required to get the written test passed and that the balance of the $5000 would be paid at the time the CDL was completed.

25.     On January 14, 2013, CHS3257 met with **PAVITAR DOSANGH SINGH** and paid him $1200. They drove to the DMV located at 4700 Broadway, Sacramento, CA where **PAVITAR DOSANGH SINGH** had CHS3257 meet with an East Indian man (later identified as CHS70479) who escorted CHS3257 inside the DMV. Once inside, CHS3257 was directed to a customer window with an Asian male DMV employee who issued CHS3257 a commercial permit.

26.     DMV computer audit records for the identification illegally processed identified **ANDREW KIMURA** as the DMV employee who entered the information into the DMV computer system. The entries on the identification were made on January 14, 2013.

27.     A photo of **ANDREW KIMERA** was shown to CHS3257 who positively identified **ANDREW KIMURA** as the DMV employee CHS3257 met and who provided the commercial permit to CHS3257.

28.     At no point did CHS3257 ever pass any written or driving portion of any test to obtain a commercial CDL.

### CHS3257 obtains second commercial CDL with a bribe

29.     During July 2013, CHS3257 met with **PAVITAR DOSANGH SINGH** to discuss getting the written test passed for CHS3257's brother. **PAVITAR DOSANGH SINGH** instructed the CHS3257 to have CHS3257's brother go to the DMV with a good medical certificate and pay the fee for a CDL learner's permit. Once CHS3257's brother had the learner's permit, **PAVITAR DOSANGH SINGH** instructed CHS3257 to pay **PAVITAR DOSANGH SINGH** $1500 in order to have the written test passed for CHS3257's brother. On

August 8, 2013, **PAVITAR DOSANGH SINGH** told CHS3257 that the "Asian male" at the DMV passed the written test for his brother. Your affiant believes the "Asian Male" refers to **ANDREW KIMURA**, who was the person who provided CHS3257 the commercial permit in January 2013 after the CHS paid **PAVITAR DOSANGH SINGH** a bribe.

30.     DMV computer records for CHS3257's brother's license shows that **ANDREW KIMERA** entered the written test for the commercial CDL as passed.

### CHS3257 attempts to obtain third CDL with bribe

31.     During May 2014, CHS3257 met with **PAVITAR DOSANGH SINGH** concerning getting a CDL for an associate. **PAVITAR DOSANGH SINGH** demanded $1500 to get the written test passed for CHS3257's associate and that to get the entire license processed it would cost $5500.

32.     In June 2014, CHS3257 met with Sodhi and paid Sodhi $5500 to get the CDL completed for CHS3257's associate.

33.     DMV computer records show that **ANDREW KIMURA** entered the written test as passed for this license.

34.     To date, neither CHS3257 nor his/her associate has yet received the commercial CDL. The CHS3257's associate has never taken any written or driving test for a commercial CDL.

35.     Based on conversations your affiant has had with an investigator at the DMV, the reason that no CDL was issued was because CHS3257's associate moved to another state and received an identification card in that state, which caused a hold to be placed on his CDL.

### Search Warrant of Pavitar Dosangh Singh's Cellphone and Discussions with CHS70479

36.     On or about March 25, 2015, the Honorable Kendall J. Newman, upon a finding of probable cause, authorized search warrants for **PAVITAR DOSANGH SINGH'S** telephone along with that of Sodhi. Attached hereto and incorporated by reference is the search warrant.

37.     On or about April 1, 2015, your affiant along with other agents of the FBI executed a search warrant for **PAVITAR DOSANGH SINGH**'s cellphone. The same day, Special Agent Ryan Penna and other FBI agents executed a search warrant for Sodhi's phone. A forensic analysis was performed. **PAVITAR DOSANGH SINGH**'s phone contained evidence of communications between **PAVITAR DOSANGH SINGH** and CHS70479 concerning

8

obtaining CDLs in exchange for the payment of money, and Sodhi's phone revealed communications with **PAVITAR DOSANGH SINGH** regarding the same.

38.    In April 2015, CHS70479 was approached and interviewed by your affiant and Ryan Penna. As noted above, CHS70479 admitted to your affiant and Special Agent Penna being involved with **PAVITAR DOSANGH SINGH** in illegal activity related to obtaining drivers licenses, and CHS70479 acted, at times, as an intermediary between **PAVITAR DOSANGH SINGH** and **ANDREW KIMURA**, including with respect to the payment of money received from **PAVITAR DOSANGH SINGH** to be paid to **ANDREW KIMURA** in exchange for **ANDREW KIMURA** accessing the DMV's database to alter individuals' records to fraudulently indicate that individuals had passed various written or driving tests.

39.    CHS70479 explained that **PAVITAR DOSANGH SINGH** will charge money to applicants and that he keeps a portion of this bribe payment and provides a portion to **ANDREW KIMURA**, with CHS70479 also keeping a portion. CHS70479 stated that **PAVITAR DOSANGH SINGH** typically will charge an applicant $1000 to pass the written portion of a Class A commercial CDL, with the proceeds divided roughly equally between **PAVITAR DOSANGH SINGH**, CHS70470, and **ANDREW KIMURA**.

40.    CHS70479 admitted to making bribe payments to **ANDREW KIMURA** in return for **ANDREW KIMURA** illegally processing: driver license renewals, Class A and Class C written tests, and Class C behind the wheel tests.

41.    CHS70479 has had direct contact with DMV employee **ANDREW KIMURA**, including through telephone calls and text messages to **ANDREW KIMURA**'s cellphones. The cellphone numbers that CHS70479 identified for **ANDREW KIMURA** are 916-501-8702 (**TARGET PHONE 3**) and 916-604-2339 (**TARGET PHONE 4**). **TARGET PHONE 3** was the original number CHS70479 used to communicate with **ANDREW KIMURA**. During April 2015, **ANDREW KIMURA** informed CHS70479 that he had a new phone for communications concerning the DMV licenses he was processing for **PAVITAR DOSANGH SINGH** via CHS704979. In July 2015, **ANDREW KIMURA** notified CHS70479 that using two phones was too much of a hassle and that CHS70479 would go back to using **TARGET PHONE 3** again.

42.    During April 2015 through July 2015, CHS70479 texted DMV license numbers to **ANDREW KIMURA** via **TARGET PHONE 3** and **TARGET PHONE 4**. The DMV license

numbers were provided to CHS70479 by **PAVITAR DOSANGH SINGH** and were for **ANDREW KIMURA** to illegally process in return for receiving a bribe payment. Since April 2015, CHS70479 has been using a cellphone provided by the FBI to communicate with both **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH**. Records of text messages sent to and received from both **ANDREW KIMURA** have been extracted from CHS70479's FBI provided phone. The contents of those text messages contain evidence that **ANDREW KIMURA** is processing DMV licenses provided to him in return for bribe payments.

43.     CHS70479 also had direct discussions with **PAVITAR DOSANGH SINGH** about payment of bribe money to **ANDREW KIMURA**. This includes text messages and telephone calls between CHS70479 and **PAVITAR DOSANGH SINGH** using a new telephone and telephone number that **PAVITAR DOSANGH SINGH** obtained after the execution of the search warrant for his previous telephone on or about April 1, 2015. The new cellphone number that CHS70479 identified for **PAVITAR DOSANGH SINGH** is 707-590-5118 (**TARGET PHONE 1**).

44.     During April 2015 through July 2015, CHS70479 texted DMV license numbers to **PAVITAR DOSANGH SINGH** via **TARGET PHONE 1**. The DMV license numbers were provided to CHS70479 by **PAVITAR DOSANGH SINGH** via text messaging from **TARGET PHONE 1** and were for **ANDREW KIMURA** to illegally process in return for receiving a bribe payment. Since April 2015, CHS70479 has been using a cellphone provided by the FBI to communicate with both **PAVITAR DOSANGH SINGH** and **ANDREW KIMURA**. Records of text messages sent to and received from **PAVITAR DOSANGH SINGH** have been extracted from CHS70479's FBI provided phone. The contents of those text messages contain evidence that **ANDREW KIMURA** is processing DMV licenses provided to him in return for bribe payments.

45.     As noted above, on April 1, 2015, agents executed a search warrant for a different telephone used by **PAVITAR SOSANGH SINGH** to contact CHS3257. After the execution of the search warrant, **PAVITAR SOSANGH SINGH** provided CHS3257 a new cellphone number 916-533-4208 (**TARGET PHONE 2**) for CHS3257 to contact him on. (This was different from the cellphone number (**TARGET PHONE 1**) that **PAVITAR SOSANGH SINGH** provided to and has been using to contact CHS70479, and, therefore, your affiant believes that **PAVITAR SOSANGH SINGH** is using multiple phones.) **PAVITAR**

**DOSANGH SINGH** also advised CHS3257 to get a new cellphone number.  Since April 2015, CHS3257 has been contacting **PAVITAR DOSANGH** SINGH on **TARGET PHONE 2** concerning the processing of a CDL that CHS3257 paid a bribe to have illegally completed.

46.     CHS70479, at the direction of the FBI, engaged in recorded meetings with **ANDREW KIMURA** where CHS70479 paid bribes to **ANDREW KIMURA** in return for **ANDREW KIMURA** illegally processing: driver license renewals, Class A and Class C written tests, and Class C behind the wheel tests.

<u>**CHS70479 BRIBES TO ANDRW KIMURA**</u>

47.     On May 6, 2015, CHS70479 met **ANDREW KIMURA** in the parking lot of the DMV located at 4700 Broadway, Sacramento, CA.  CHS70479 paid a bribe of $200 to **ANDREW KIMURA** for the passing of a Class C "behind the wheel" test.  **ANDREW KIMURA** provided CHS70479 the finished DMV paperwork.

48.     On May 12, 2015, CHS70479 met with **ANDREW KIMURA** in the parking lot of the DMV located at 4700 Broadway, Sacramento, CA.  CHS70479 paid a bribe of $300 to **ANDREW KIMURA** for the passing of a Class A written test.  **ANDREW KIMURA** provided CHS70479 the finished DMV paperwork.  A video and/or audio recording of this meeting and bribe payment was obtained.

49.     On June 3, 2015, CHS70479 met with **ANDREW KIMURA** in the parking lot of the DMV located at 4700 Broadway, Sacramento, CA and paid **ANDREW KIMURA** a bribe of $1100 for the illegal processing of 4 drivers licenses.  Two of the licenses were Class As, one was a Class B, and the last a Class C.  A video and/or audio recording of this meeting and bribe payment was obtained.

50.     On June 11, 2015, CHS70479 met with **ANDREW KIMURA** in the parking lot of the DMV located at 4700 Broadway, Sacramento, CA and paid **ANDREW KIMURA** a bribe of $1400 for four driver licenses **ANDREW KIMURA** processed illegally.  A video and/or audio recording of this meeting and bribe payment was obtained.

51.     On July 6, 2015, CHS70479 met with **ANDREW KIMURA** in the parking lot of the DMV located at 4700 Broadway, Sacramento, CA and paid a bribe of $300 to **ANDREW KIMURA** for a license **ANDREW KIMURA** processed illegally.  A video and/or audio recording of this meeting and bribe payment was obtained.

52.     Between April 1, 2015 and July 15, 2015, CHS70479, while cooperating with the FBI, has paid direct bribes to **ANDREW KIMURA** totaling $3600 for illegally processing 12 driver licenses.  This amount of money was received from **PAVITAR DOSANGH SINGH**, who as discussed above, charged applicants $1000 for the written tests.  For the 12 licenses obtained from ANDREW KIMURA, I believe that **PAVITAR DOSANGH SINGH** charged and received from applicants approximately $12,000.

53.     CHS70479 stated to the agents, and showed agents evidence from his telephone, that **PAVITAR DOSANGH SINGH** used **TARGET PHONE 1** to contact CHS70479 about the payment of money to **ANDREW KIMURA**, and that **ANDREW KIMURA** used TARGET PHONE 2 to coordinate the receipt of bribe money from CHS70479 and to give to CHS70479 and others the CDLs or receipts fraudulently obtained as part of the scheme.

54.     Additionally, as discussed above, prior to April 1, 2015, **PAVITAR DOSANGH SINGH** had been paid over $3000 to pass the written tests and **PAVITAR DOSANGH SINGH** had arranged for the payment of $15,000 to be paid to Sodhi for passing the behind-the-wheel driving tests for Class A CDLs as part of the bribery and identity fraud scheme described herein.

<u>**Conclusion of Probable Cause**</u>

55.     Based on the foregoing information, I believe that there is probable cause to believe that **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** have committed the following criminal offenses:

| <u>Count</u> | <u>Defendant</u> | <u>Date</u> | <u>Offense</u> |
|---|---|---|---|
| 1. | **ANDREW KIMURA; PAVIATAR DOSANGH SINGH** | January 2013 – July 2015 | 18 U.S.C. § 371 – Conspiracy to Commit Bribery and to Commit Identity Fraud |
| 2. | **ANDREW KIMURA** | May 2015 – July 2015 | 18 U.S.C. § 666(a)(1)(B) – Bribery Concerning Programs Receiving Federal Funds |
| 3. | **PAVIATAR DOSANGH SINGH** | May 2015 – July 2015 | 18 U.S.C. § 666(a)(2) – Bribery Concerning Programs Receiving Federal Funds |

56.     Further, based on the foregoing information, including but not limited to the evidence that **PAVITAR DOSANGH SINGH** aka "Peter" and **ANDREW KIMURA** have used and are using their cellular telephones to communicate with via calls and text messages, and that there is probable cause to believe that evidence and fruits of the identity fraud and bribery conspiracy, as further described in Attachments B-1 and B-2, respectively, will be located on the persons of **PAVITAR DOSANGH SINGH** aka "Peter" and **ANDREW KIMURA**, including on the TARGET PHONES, as further described in Attachments A-1 through A-2.

## V.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

57.     Based on my knowledge, training, and experience, I know that electronic devices such as cellular telephones can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

58.     Forensic evidence.  As further described in Attachment B-1 and B-2, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET PHONES was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET PHONES because:

i.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

ii.     Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

iii.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

iv.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other

13

information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        v.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

        vi.    I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

    59.    <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET PHONES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## VI.   <u>REQUEST TO SEAL</u>

    60.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this request for a search warrant, including the search warrant. I believe that sealing these documents are necessary because the items and information to be seized are relevant to an ongoing criminal investigation. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and they also disseminate them to other criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the investigation. Further, this affidavit relies on information from a confidential human source. Disclosure of the information from these individuals may reveal their identities.

## VII.   CONCLUSION

61.     Based on the foregoing facts and my knowledge, training, and experience, as well as that of the DMV and other investigators with whom I have worked and consulted, your affiant believes, that **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** aka "Peter" have conspired with each other to violate 18 U.S.C. § 1028(a)-(c) (Fraud and related activity in connection with identification documents) and 18 U.S.C. § 666 (Bribery), in violation of 18 U.S.C. § 371 (Conspiracy), and that **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** have committed bribery, in violation of 18 U.S.C. § 666(a)(1)(B) and § 666(a)(2), respectively, as identified in the counts above. Accordingly, I respectfully request that the Court issue a complaint charging **ANDREW KIMURA** and **PAVITAR DOSANGH SINGH** aka "Peter" with those crimes.

62.     Wherefore, your affiant also respectfully requests that a search warrant be issued allowing FBI agents, with appropriate assistance from other federal, state, and local law enforcement agencies, to search the persons of **PAVITAR DOSANGH SINGH** aka "Peter" and **ANDREW KIMURA**, as further described in Attachment A-1 and Attachment A-2, respectively, and to seize the **TARGET PHONES**, and to search for and seize items that constitute evidence of the commission of an offense, contraband, the fruits of crime, and things otherwise criminally possessed and property designed or intended for use or which is or has been used as the means of committing a criminal offense, as described in Attachments B-1 and B-2, respectively, of this Affidavit.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

MATTHEW YOUNG
Special Agent
Federal Bureau of Investigation

Subscribed to and Sworn before me on _____7—/5_____, 2015

HONORABLE EDMUND F. BRENNAN
United States Magistrate Judge


Approved as to Form

TODD A. PICKLES
Assistant U.S. Attorney

16

## ATTACHMENT A-1

Items to be searched:

The person of PAVITAR DOSANGH SINGH aka "Peter," as further described as having a date of birth of July 14, 1960, with black hair and approximately 5'8" in height, and including any cellular telephones within his possession, custody, or control, including that with the numbers 707-590-5118 and916-553-4208.

# ATTACHMENT A-2

## Items to be searched:

The person of **ANDREW KIMURA** as further described as having the birth date of 01/01/1985, with black hair and approximately 5'6" in height, and including any cellular telephones within his possession, custody, or control, including that with the cellular telephone numbers 916-501-8702 and 916-604-2339.

**ATTACHMENT B-1**

Items to be seized:

The following items, which constitute the instrumentalities or evidence of violations of Title 18 U.S.C. Section 666 (Bribery), 18 U.S.C. § 1028(a)-(c) (fraud and related activity in connection with identification documents); and Title 18, United States Code, Section 371 (Conspiracy), may be seized:

1. Any cellular telephones, including those with the numbers: 707-590-5118 and 916-553-4208.

2. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the issuance of, authorization of, or application for any California driver license;

3. All documents, records, correspondence (including but not limited to emails and text messages), and data identifying any individual involved in the issuance of, authorization of, or application for any California driver license;

4. All documents, records, correspondence (including but not limited to emails and text messages), and data showing or relating to the identification or contact information for any person reasonably believed to be currently or formerly employed by the California Department of Motor Vehicles;

5. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the receipt, deposit, transfer, loan, or payment of any money or funds relating to the issuance of, authorization of, or application for any California driver license;

6. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the receipt, deposit, transfer, loan, or payment of any money or funds to any person reasonably believed to be currently or formerly employed by the California Department of Motor Vehicles; and

7. Address books, appointment books, calendars, and schedules, including any information recording travel or meetings;

8. All bank records, checks, credit card bills, account information, and other financial records;

9. All cash, currency, or any check in any amount above $100; and

10. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## ATTACHMENT B-2

Items to be seized:

The following items, which constitute the instrumentalities or evidence of violations of Title 18 U.S.C. Section 666 (Bribery), 18 U.S.C. § 1028(a)-(c) (fraud and related activity in connection with identification documents); and Title 18, United States Code, Section 371 (Conspiracy), may be seized:

1. Any cellular telephones, including those with the number 916-501-8702 and 916-604-2339.

2. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the issuance of, authorization of, or application for any California drivers' license;

3. All documents, records, correspondence (including but not limited to emails and text messages), and data identifying any individual involved in the issuance of, authorization of, or application for any California driver license;

4. All documents, records, correspondence (including but not limited to emails and text messages), and data showing or relating to the identification or contact information for any person reasonably believed to be currently or formerly employed by the California Department of Motor Vehicles;

5. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the receipt, deposit, transfer, loan, or payment of any money or funds relating to the issuance of, authorization of, or application for any California driver license;

6. All documents, records, correspondence (including but not limited to emails and text messages), and data relating to the receipt, deposit, transfer, loan, or payment of any money or funds to any person reasonably believed to be currently or formerly employed by the California Department of Motor Vehicles; and

7. Address books, appointment books, calendars, and schedules, including any information recording travel or meetings;

8. All bank records, checks, credit card bills, account information, and other financial records;

9. All cash, currency, or any check in any amount above $100; and

10. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Attachment B-2