1  PHILLIP A. TALBERT
   Acting United States Attorney
2  TODD A. PICKLES
   ROSANNE L. RUST
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

6  Attorneys for Plaintiff
   United States of America

7



**FILED**

MAY 13 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

8                    IN THE UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              CASE NO. 2:15-CR-00161 GEB

12                   Plaintiff,            PLEA AGREEMENT

13              v.

14  ANDREW KIMURA,

15                   Defendant.

16

17                    **I.      INTRODUCTION**

18  **A.    Scope of Agreement.**

19         The Indictment in this case charges the defendant Andrew Kimura (hereinafter "defendant") in

20  Count Ones and Three with Conspiracy to Commit Bribery and to Commit Identity Fraud in violation of

21  Title 18, United States Code Section 371, in Count Four with Bribery Concerning Programs Receiving

22  Federal Funds, in violation of Title 18 United States Code Section 666, and Count Six through Seven

23  and Eleven through Seventeen with Fraud Involving Identification Documents, in violation of Title 18,

24  United States Code Section 1028.  The defendant agrees to plead to Counts One and Three of the

25  Indictment.  This document contains the complete plea agreement between the United States Attorney's

26  Office for the Eastern District of California (the "government") and the defendant regarding this case.

27  This plea agreement is limited to the United States Attorney's Office for the Eastern District of

28  California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

PLEA AGREEMENT                      1

1 | authorities.

2 | **B.**   **Court Not a Party.**

3 | The Court is not a party to this plea agreement. Sentencing is a matter solely within the

4 | discretion of the Court, and the Court may take into consideration any and all facts and circumstances

5 | concerning the criminal activities of defendant, including activities which may not have been charged in

6 | the Indictment. The Court is under no obligation to accept any recommendations made by the

7 | government, and the Court may in its discretion impose any sentence it deems appropriate up to and

8 | including the statutory maximum stated in this plea agreement.

9 | If the Court should impose any sentence up to the maximum established by the statute, the

10 | defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all

11 | of the obligations under this plea agreement. The defendant understands that neither the prosecutor,

12 | defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

13 | receive.

14 | **II.**   **DEFENDANT'S OBLIGATIONS**

15 | **A.**   **Guilty Plea.**

16 | The defendant will plead guilty to Counts One and Three of the Indictment, each of which

17 | charges him with Conspiracy to Commit Bribery and to Commit Identify Fraud, in violation of Title 18,

18 | United States Code Section 371. The defendant agrees that he is in fact guilty of these charges and that

19 | the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

20 | The defendant agrees that this plea agreement will be filed with the Court and become a part of

21 | the record of the case. The defendant understands and agrees that she will not be allowed to withdraw

22 | his plea should the Court not follow the government's sentencing recommendations.

23 | The defendant agrees that the statements made by him in signing this Agreement, including the

24 | factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

25 | the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

26 | guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f)

27 | and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

28 | Agreement generally.

1        **B.    Remand.**

2            The defendant acknowledges that he may be remanded into custody upon the entry of his plea

3    unless, pursuant to 18 U.S.C. § 3143(a)(1), the Court finds by clear and convincing evidence that he is

4    not likely to flee or pose a danger to the safety of any other person or the community.  The United States

5    does not oppose the defendant remaining out of custody until the date of his judgment and sentencing

6    provided he does not violate any federal, state, or local laws and remains in compliance with all of the

7    terms and conditions of his pretrial release as set by the Court.

8        **C.    Restitution.**

9            The defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) to the California

10   Department of Motor Vehicles and to any person who, at the time of sentencing or restitution hearing, it

11   has been determined has been injured or who has suffered property damage as the result of the criminal

12   conduct set forth in this plea agreement and the factual basis of the agreement, including but not limited

13   to the issuance of California driver licenses to individuals who did not pass the requisite examinations

14   for issuance of the licenses.  Defendant further agrees that he will not seek to discharge any restitution

15   obligation or any part of such obligation in any bankruptcy proceeding.  Payment of restitution shall be

16   by cashier's or certified check made payable to the Clerk of the Court.

17       **D.    Fine.**

18           The defendant agrees to pay a fine if ordered by the Court.

19       **E.    Special Assessment.**

20           The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

21   a check or money order payable to the United States District Court to the United States Probation Office

22   immediately before the sentencing hearing.  If the defendant is unable to pay the special assessment at

23   the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating

24   in the Inmate Financial Responsibility Program.

25       **F.    Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

26           If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,

27   or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The

28   government will no longer be bound by its representations to the defendant concerning the limits on

PLEA AGREEMENT                              3

criminal prosecution and sentencing as set forth herein.  One way a cooperating defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

PLEA AGREEMENT                                    4

1   By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

2   **G.    Asset Disclosure.**

3        The defendant agrees to make a full and complete disclosure of his assets and financial
4   condition, and will complete the United States Attorney's Office's "Authorization to Release
5   Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change
6   of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant
7   understands that this plea agreement is voidable at the option of the government if the defendant fails to
8   complete truthfully and provide the described documentation to the United States Attorney's office
9   within the allotted time.

10       **III.    THE GOVERNMENT'S OBLIGATIONS**

11   **A.    Recommendations.**

12       1.    Incarceration Range.

13        The government will recommend that the defendant be sentenced at the low-end of the
14   applicable guideline range provided that the range is no less than a total offense level of 23. If the total
15   offense level is less than 23, the government will recommend that the defendant be sentenced within the
16   applicable guideline range as determined by the Court so long as the total offense level is no less than
17   21. If the Court finds the applicable offense level is less than 21, the United States is permitted to argue
18   in support of a sentence of up to 46 months imprisonment under 18 U.S.C. § 3353(a).

19       2.    Acceptance of Responsibility.

20        The government will recommend a two-level reduction (if the offense level is less than
21   16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if
22   the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G.
23   § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation
24   of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise
25   engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either
26   in the preparation of the pre-sentence report or during the sentencing proceeding.

27   **B.    Use of Information for Sentencing.**

28        The government is free to provide full and accurate information to the Court and Probation,

PLEA AGREEMENT                              5

1  including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

2  statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also

3  understands and agrees that nothing in this Plea Agreement bars the government from defending on

4  appeal or collateral review any sentence that the Court may impose.

5  **IV.      ELEMENTS OF THE OFFENSE**

6  At a trial, the government would have to prove beyond a reasonable doubt the following

7  elements of the offenses to which the defendant is pleading guilty, that is <u>Conspiracy to Commit Bribery</u>

8  <u>and to Commit Identity Fraud</u>, in violation of Title 18, United States Code Section 371:

9  First, there was an agreement between two or more persons to commit at least one crime as

10  charged in the Indictment, that is Bribery Concerning Programs Receiving Federal Funds, in violation of

11  Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2), and Identity Fraud, in violation of

12  Title 18, United States Code section 1028(a)(1);

13  Second, the defendant became a member of the conspiracy knowing of at least one of its objects

14  and intending to help accomplish it; and

15  Third, one of the members of the conspiracy performed at least one overt act for the purpose of

16  carrying out the conspiracy.

17  With respect to <u>Bribery Concerning Programs Receiving Federal Funds</u>, in violation of Title 18,

18  United States Code sections 666(a)(1)(B), the elements are as follows:

19  First, at the times alleged in the Information, a person was an agent of the California Department

20  of Motor Vehicles;

21  Second, at the times alleged in the Information, the Department of Motor Vehicles received

22  federal benefits in excess of $10,000;

23  Third, the agent of the DMV accepted and agreed to accept something of value from one or more

24  persons, including the defendant;

25  Fourth, the agent of the DMV acted corruptly with the intent to be influenced or rewarded in

26  connection with the business and series of transactions of the Department of Motor Vehicles; and

27  Fifth, the value of the business and series of transactions to which the payment was related—to

28  wit, California driver licenses—was at least $5,000.

PLEA AGREEMENT                              6

1    As used herein, a "thing of value" may be tangible property, intangible property, or services, so
2    long as it has value.

3    With respect to Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18,
4    United States Code sections 666(a)(2), the elements are as follows:

5    First, at the times alleged in the Information, a person was an agent of the California Department
6    of Motor Vehicles;

7    Second, at the times alleged in the Information, the Department of Motor Vehicles received
8    federal benefits in excess of $10,000;

9    Third, the defendant gave or offered something of value to the agent of the DMV;

10   Fourth, the defendant acted corruptly with the intent to influence or reward the agent of the
11   DMV in connection with the business and series of transactions of the Department of Motor Vehicles;
12   and

13   Fifth, the value of the business and series of transactions to which the payment was related—to
14   wit, California driver licenses—was at least $5,000.

15   With respect to Fraud Involving Identification Documents, in violation of Title 18, United States
16   Code section 1028(a)(1) & 2, the elements are as follows:

17   First, the defendant knowingly produced an identification document;

18   Second, the defendant produced the identification document without lawful authority; and

19   Third, the identification document (a) was to be issued by or under the authority of the State of
20   California, or a political subdivision of the State, (b) was in or affected commerce between one state and
21   other states; or (c) in the course of production, the identification document was transported in the mail.

22   As used herein, an "identification document" means a document made or issued by or under the
23   authority of the State of California or political subdivision of the State, that, when completed with
24   information concerning a particular individual, is of a type intended or commonly accepted for the
25   purpose of identification of individuals.  18 U.S.C. § 1028(d)(3).

26   The defendant fully understands the nature and elements of the crimes charged in the
27   Information to which he is pleading guilty, together with the possible defenses thereto, and has
28   discussed them with his attorney.

PLEA AGREEMENT                                              7

## V.    MAXIMUM SENTENCE

### A.    Maximum Penalty.

The maximum sentence that the Court can impose for each count of Conspiracy to Commit Bribery and Identity Fraud in violation of 18 U.S.C. § 371 is 5 years of incarceration, a fine of up of up to $250,000.00, a three-year period of supervised release, and a special assessment of $100.00. By pleading to two counts, the maximum length of any sentence of imprisonment that the Court can impose is 10 years. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.    Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI.    SENTENCING DETERMINATION

### A.    Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

1    **B.    Stipulations Affecting Guideline Calculation:**

2    The government and the defendant agree that there is no material dispute as to the following

3    sentencing guidelines variables and therefore stipulate to the following:

4    1.    Grouping for Multiple Counts

5    Under U.S.S.G. § 1B1.2(d), where a defendant is convicted of a multi-object conspiracy, the

6    guidelines are calculated as if the defendant was convicted on a separate count for each object, unless

7    the objects are grouped under U.S.S.G. § 3D1.2. *See* U.S.S.G. § 1B1.1.2, Appl. Note 4. Because the

8    objects of the conspiracy to which the defendant is pleading guilty—bribery and identity fraud—are

9    grouped under U.S.S.G. § 3D1.2(d), the offense level is determined by the offense guideline that

10   produces the highest offense level. U.S.S.G. § 3D1.3(b). The parties estimate that the highest offense

11   level under the guidelines is under U.S.S.G. § 2C1.1 with respect to Bribery Concerning Programs

12   Receiving Federal Funds, in violation of Title 18, United States Code sections 666(a)(1)(B) & 666(a)(2).

13   Accordingly, the parties estimate that the offense guideline under U.S.S.G. § 2C1.1 will be used to

14   determine the offense level for Conspiracy To Commit Bribery and to Commit Identity Fraud, in

15   violation of Title 18, United States Code Section 371.

16   2.    Base Offense Level:  **14**

17   The parties agree that defendant was a public official within the meaning of U.S.S.G. § 2C1.1(a).

18   U.S.S.G. § 2C1.1(a); U.S.S.G. § 2C1.1, Appl. Note 1(C).

19   3.    Multiple Bribes:  **+2**

20   The parties agree that defendant was paid and received more than one bribe in connection with

21   the offense conduct. U.S.S.G. § 2C1.1(b)(1).

22   4.    Value of Benefit Received In Return for Bribe:  **+4/+12**

23   The parties agree that the value of the benefit received in return for payment with respect to the

24   defendant's own conduct within the conspiracies is no less than $15,000 and no greater than $550,000.

25   Accordingly, the parties estimate that, the base offense level is increased by no less than 4 and no greater

26   than 12 levels. U.S.S.G. § 2C1.1(b)(2); U.S.S.G. § 2B1.1(b)(1)(C)-(G); U.S.S.G. § 2C1.1, Appl. Note 3.

27

28

1        5.     Government Identification Document:    **+2**

2        The parties agree that defendant, as a public official, facilitated others in obtaining a government

3    identification document, to wit, California issued driver licenses.  U.S.S.G. § 2C1.1(b)(4); U.S.S.G.

4    § 2C1.1, Appl. Note. 1.

5        6.     Acceptance of Responsibility:    **-3**

6        See paragraph III.A.2 above.

7        7.     Criminal History:    **No Agreement**

8        The parties do not have any agreements as to the defendant's criminal history.  The defendant is

9    permitted to object or otherwise challenge any criminal history calculations determined by the Probation

10   Officer and she preserves the right to argue that her criminal history category substantially over-

11   represents the seriousness of her criminal history under U.S.S.G. § 4A1.3(b).  For its part, the

12   government is permitted to argue in support of any such calculations by the Probation Officer.

13       8.     Departures or Other Enhancements or Reductions:

14       The parties agree that they will not seek or argue in support of any other specific offense

15   characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

16   or cross-references, except that the government may move for a departure or an adjustment based on any

17   post-plea obstruction of justice (§3C1.1), or as provided under U.S.S.G. § 2C1.1, Appl. Note 7.  The

18   defendant may make any argument for departure from the Sentencing Guidelines and the United States

19   may oppose.

20       The defendant is free to recommend to the Court whatever sentence he believes is appropriate

21   under 18 U.S.C. § 3553(a).  The government reserves the right to oppose any variance under 18 U.S.C.

22   § 3553(a).

23                       **VII.    WAIVERS**

24       **A.    Waiver of Constitutional Rights.**

25       The defendant understands that by pleading guilty he is waiving the following constitutional

26   rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

27   be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

28   testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be

PLEA AGREEMENT             10

1 | compelled to incriminate himself.

2 | **B.** **Waiver of Appeal and Collateral Attack.**

3 | The defendant understands that the law gives the defendant a right to appeal his guilty plea,

4 | conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to

5 | appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

6 | exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant

7 | specifically gives up the right to appeal any order of restitution the Court may impose.

8 | Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

9 | one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

10 | statutory maximums; and/or (2) the government appeals the sentence in the case. The defendant

11 | understands that these circumstances occur infrequently and that in almost all cases this agreement

12 | constitutes a complete waiver of all appellate rights.

13 | In addition, regardless of the sentence the defendant receives, the defendant also gives up any

14 | right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

15 | aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

16 | If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set

17 | aside his sentence on any of the counts to which he is pleading guilty, the government shall have the

18 | rights set forth in Section II.F, herein.

19 | **C.** **Waiver of Attorneys' Fees and Costs.**

20 | The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

21 | 119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

22 | investigation and prosecution of all charges in the above-captioned matter and of any related allegations

23 | (including without limitation any charges to be dismissed pursuant to this plea agreement and any

24 | charges previously dismissed).

25 | **VIII.** **ENTIRE PLEA AGREEMENT**

26 | Other than this plea agreement, no agreement, understanding, promise, or condition between the

27 | government and the defendant exists, nor will such agreement, understanding, promise, or condition

28 | exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

1  counsel for the United States.

2

3                    IX.        **APPROVALS AND SIGNATURES**

4     A.     **Defense Counsel.**

5         I have read this plea agreement and have discussed it fully with my client. The plea agreement

6  accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

7  plead guilty as set forth in this plea agreement.

   Dated:
8                                         WILLIAM PORTANOVA
9                                         Attorney for Defendant

10

11    B.     **Defendant:**

12        I have read this plea agreement and carefully reviewed every part of it with my attorney. I

13 understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

14 understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

15 case. No other promises or inducements have been made to me, other than those contained in this plea

16 agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

17 Finally, I am satisfied with the representation of my attorney in this case.

   Dated:
18                                         ANDREW KIMURA
19                                         Defendant

20

21    C.     **Attorney for United States:**

22        I accept and agree to this plea agreement on behalf of the government.

23 Dated:  ✓ /13/ 2016              PHILLIP A. TALBERT
                                    Acting United States Attorney
24

25

26                                 TODD A. PICKLES
                                   ROSANNE L. RUST
27                                 Assistant United States Attorneys

28

   PLEA AGREEMENT                       12

1

**EXHIBIT "A"**

2

**Factual Basis for Plea**

3  The defendant Andrew Kimura worked at the California Department of Motor Vehicles ("DMV") from 2010 until 2015. At all relevant times, Kimura was Licensing-Registration Examiner
4  ("LRE)" assigned to the Sacramento office. As an LRE, Kimura's job duties included, but were not limited to, administering the written examinations for Class A, Class B, and Class C CDLs, and
5  administering the behind-the-wheel driving examinations for Class C CDLs, the processing of driver license and identification card applications including, Class A and Class B CDLs and Class C CDLs,
6  and other duties as assigned.

7  Beginning in at least April 2013, and continuing through at least July 2015, Kimura received money from various brokers in order to provide California driver licenses ("CDLs") for individuals
8  without those individuals needing to take or pass the requisite tests.

9  The California DMV is a political subdivision and agency of the State of California that registers vehicles in California and licenses California drivers. The DMV also issues identification cards for
10  individuals in California. The DMV is funded by vehicle registration and licensing fees paid by residents and licensees of the State of California. The DMV also received federal grants, including the
11  following grant money for the following fiscal years (July 1 through June 30): $2,500,000 for fiscal year 2011-2012; $726,000 for 2012-2013; $4,000,000 for fiscal 2013-2014; and $800,000 for fiscal year
12  2014-2015.

13  The California DMV issues different classes of CDLs, including Class A and Class B commercial licenses and Class C general licenses. The issuance of a Class A, Class B, or Class C CDL
14  affects interstate commerce in that, among other effects, the licenses enable recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

15

16  At all relevant times between 2011 and 2015, in order to obtain a CDL, an applicant was required to pay an application fee, after which an electronic record was generated in the DMV's
17  computer database for the applicant. Thereafter, the applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV
    locations. After an individual passed the necessary written examinations for a Class A, Class B, or Class
18  C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result
19  in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

20

21  The behind-the-wheel driving test was administered by an LRE for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at
    select DMV locations in California, including Salinas, California. In contrast, the DMV typically
22  administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations. After the applicant passed the requisite behind-the-wheel driving examination administered
23  by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would
24  then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered. Thereafter, an official, hard plastic CDL was printed in Sacramento,
25  California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

26

27  Beginning in 2011, the Federal Bureau of Investigation ("FBI") began an investigation involving individuals in the Sacramento area being offered the opportunity to obtain commercial CDLs without
    having to take the written or behind-the-wheel driving examinations in exchange for the payment of
28  money. Through the course of the investigation, agents identified co-defendant Pavitar Dosangh Singh aka "Peter" (hereinafter "Pavitar Dosangh"), as a person who offered to obtain Class A CDLs for

PLEA AGREEMENT                          A-1

individuals who did not want or could not take or pass the requisite written and behind-the-wheel driving examinations. In discussions with an FBI confidential source ("CS"), Pavitar Dosangh told the FBI CS he had connections to have the written portion of the Class A CDL passed and the behind-the-wheel driving examination passed. For the latter, Pavitar Dosangh provided the FBI CS with contact information for Kulwinder Dosanjh Singh (hereinafter "Kulwinder Dosanjh"), charged elsewhere in *United States v. Kulwinder Dosanjh Singh*, 2:15-cr-146 JAM. Kulwinder Dosanjh told the FBI CS that in exchange for $5,000 he could get the behind-the-wheel driving examination passed for the FBI CS without the FBI CS needing to take the examination.

As to Count One, on or about January 14, 2013, an FBI confidential human source (hereinafter "Person A") met with co-defendant Pavitar Dosangh and paid him $1,200 for the purpose of obtaining a Class C CDL without having to take the written portion of the examination. Person A and Pavitar Dosangh drove to the DMV office located at 4700 Broadway, Sacramento, CA where Pavitar Dosangh had Person A meet with another individual who escorted Person A inside the DMV. Once inside, Person A was directed to a customer window with an Asian male DMV employee who issued Person A a commercial permit.

A photo of Kimura was shown to Person A who positively identified Kimura as the DMV employee Person A met and who provided the commercial permit to Person A.

DMV computer audit records show that on or about January 14, 2013, Kimura accessed the DMV computer system and altered the electronic DMV record for Person A to indicate that Person A had taken and passed the written examination for a Class A CDL. At no point did Person A ever pass any written or driving portion of any test to obtain a commercial CDL.

In or around about July 2013, Pavitar Dosangh met with Person A and received $1,500 from Person A to have the written examination for a Class A CDL passed for Person A's brother (hereinafter "Person B") without Person B having to take or pass the written examination for a Class A CDL.

DMV computer audit records show that on or about August 7, 2013, Kimura accessed the DMV computer system and altered the electronic DMV record for Person B to indicate that Person B had taken and passed the written examination for a Class A CDL. At no point did Person B ever take or pass any written portion of any test to obtain a commercial CDL.

In or about around May 2014, Pavitar Dosangh met with Person A and instructed Person A to pay $1,500 to have the written examination for a pass the written examination to obtain a Class A CDL passed for Person A's associate (hereinafter "Person C").

DMV computer audit records show that on or about May 22, 2014, Kimura, accessed the DMV computer system and altered the electronic DMV record for Person C to indicate that Person C had taken and passed the written examination for a Class A CDL. At no point did Person C ever take or pass any written portion of any test to obtain a commercial CDL.

In furtherance of the foregoing, Kimura accessed the DMV's database and caused the following fraudulent documents to be issued on or about the following dates:,

| Type of Document | Identification Number | Date |
| --- | --- | --- |
| Class A CDL | Bxxxx385 | June 20, 2013 |
| Class A CDL | Dxxxx534 | November 27, 2013 |

As to Count Three, on or about June 3, 2015, co-defendant Pavitar Dosangh met with an FBI confidential human source (hereinafter "Person G") and provided $2,300 to Person G, with $1,100 of the $2,300 to be paid to Kimura for four CDLs for which Kimura had accessed the DMV's database and fraudulently altered the individuals' records. At the same meeting on or about June 3, 2015, Pavitar

1  Dosangh provided Person G with the information of five additional individuals for Kimura to access the DMV's database and to fraudulently alter the individuals' records.

2

3  On or about June 3, 2015, Kimura received $1,100 from Person G in exchange for Kimura accessing the DMV's database and fraudulently altering the records for four CDLs.

4  On or about June 10, 2015, Pavitar Dosangh met with Person G and provided $3,400 to Person G, with $1,700 of the $3,400 to be paid to Kimura for five CDLs for which Kimura had accessed the

5  DMV's database and fraudulently altered the individuals' records. At the same meeting on or about June 10, 2015, Pavitar Dosangh provided Person G with the information of three additional individuals

6  for Kimura to access the DMV's database and to fraudulently alter the individuals' records.

7  On or about June 11, 2015, Kimura received $1,400 from Person G in exchange for Kimura accessing the DMV's database and fraudulently altering the records for four CDLs. On or about July 2,

8  2015, Kimura provided Person G with the information of three individuals for Kimura to access the DMV's database and to fraudulently alter the individuals' records.

9

10  On or about July 6, 2015, Pavitar Dosangh met with Person G and provided $1,800 to Person G, with $900 of the $1,800 to be paid to Kimura for three CDLs for which Kimura had accessed the

11  DMV's database and fraudulently altered the individuals' records. At the same meeting on or about July 6, 2015, Pavitar Dosangh provided Person G with the information of nine additional individuals for Kimura to access the DMV's database and to fraudulently alter the individuals' records.

12

13  On or about July 6, 2015, Kimura received $300 from Person G for accessing the DMV's database and fraudulently altering the record for one CDL.

14  On or about July 10, 2015, Kimura received $900 from Person G for accessing the DMV's database and fraudulently altering the records for three CDLs.

15

16  On or about July 16, 2015, Kimura received $1,300 from Person G for accessing the DMV's database and fraudulently altering the records for five CDLs.

17  In furtherance of the foregoing, Kimura accessed the DMV's database and caused the following fraudulent documents to be issued on or about the following dates:

18

| Type of Document | Identification Number | Date |
|---|---|---|
| Class C CDL | Yxxxx844 | April 3, 2015 |
| Class C CDL | Dxxxx489 | April 3, 2015 |
| Class A Renewal | Dxxxx645 | May 28, 2015 |
| Class B Renewal | Bxxxx550 | May 28, 2015 |
| Class C CDL | Yxxxx656 | June 10, 2015 |
| Class A Renewal | Fxxxx245 | June 13, 2015 |

24

25  As part of this agreement, the defendant Andrew Kimura admits that, beginning not later than April 2013 and continuing through at least July 2015, he knowingly and intentionally conspired with

26  Pavitar Dosangh and others to commit bribery and to commit identity fraud with respect to the production of California driver licenses.

27  As part of this agreement, the defendant Andrew Kimura further admits that, beginning no later than April 2013 and continuing through at least July 2015, in exchange for the receipt of money, he

28  knowingly and intentionally accessed the DMV computer system and altered records to incorrectly and fraudulently indicate that individuals had taken and passed the written portion of the examination for a

PLEA AGREEMENT                                        A-3

1   Class A or Class B CDL, had taken and passed the written and driving portions of the examination for a
    Class C CDL, including but not limited to a Class C CDL with the identification number Dxxxx551, and
2   had completed the necessary requirements for renewals for Class A and Class B CDLs, all without
    authorization.

3

4       The conduct set forth above is not meant to be exhaustive and is merely an example of Andrew
    Kimura's conduct in furtherance of the conspiracy to commit bribery and to commit identity fraud.

5

6       I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is

    concerned, I adopt it as my own true statement.

7

8   DATED:   5/13/16                              _____

9                                                ANDREW KIMURA, Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          A-4